UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MATTHEW JAMES DIETERLE, AS TRUSTEE OF THE JOHN L. DIETERLE TRUST NO. 1** § § § | |
| *Plaintiff,* § § | |
| v. § | Case No. SA-22-CA-00835-XR |
| **CINCINNATI INSURANCE COMPANY** § § § | |
| *Defendant.* § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Matthew James Dieterle, as Trustee of the John L. Dieterle Trust No. 1, files this amended complaint against Defendant, Cincinnati Insurance Company, and would show this honorable court the following:

### I. Parties

1. Plaintiff, Matthew James Dieterle, as Trustee for the John L. Dieterle Trust No. 1 (hereinafter "Dieterle"), is a Texas resident and trustee for the trust that is the named insured for the subject property located at 1040-1050 Junction Highway, Kerrville, Texas 78028.

2. Defendant, Cincinnati Insurance Company (hereinafter "Cincinnati"), is an insurance company doing business in Texas and has already answered and appeared.

### II. Agency and Respondeat Superior

3. Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant or their agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendant or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

### III. Conditions Precedent

4. All conditions precedent to recovery have occurred or been performed.

### IV. Facts of the Case

5. Dieterle purchased property insurance from Cincinnati (Policy Number EPP 019 44 67) to cover losses to Dieterle's commercial property at 1040-1050 Junction Highway, Kerrville, Texas 78028 for the policy period of May 22, 2020 to May 22, 2021. On or about May 27-28, 2020, during the subject policy period, a hail and windstorm caused substantial damage to Dieterle's property. Dieterle promptly reported this loss to Cincinnati and its agents, who assigned this loss the claim number of 3560013, with a date of loss of May 27, 2020.

6. Cincinnati had its employee Kirk Geise (hereinafter "Geise") initially inspect the subject property. Cincinnati and Geise then hired an engineer, Michael R. Burgisser (hereinafter "Burgisser") of HAAG Engineering (hereinafter "HAAG"), to report on this loss. Dieterle believes that Cincinnati and Geise hire engineers like Burgisser and HAAG because they are biased for insurers and not objective. Cincinnati and Geise hired Burgisser and HAAG in this matter to report on this loss because Cincinnati and Geise know that Burgisser and HAAG will provide them with result-oriented reports and estimates on which Cincinnati can deny or under pay an insured's storm damage insurance claim. In this respect, Burgisser and HAAG work almost exclusively for insurers from whom it earns almost all its income. Several courts have also found that HAAG is biased for insurers and gives insurers result-oriented reports on which those insurers can rely to deny or underpay a policyholder's insurance claim.

7. On July 14, 2020, Burgisser inspected the property along with Dieterle's contractors, Brian Sagraves and Bill Hill. During this inspection, Mr. Sagraves and Mr. Hill pointed out the hail damage at the property to Burgisser. Burgisser found hail dents in the AC coil fins and determined that recent hail of up to one inch in diameter had damaged Dieterle's property. Despite Burgisser finding significant hail damage at Dieterle's property, in an August 12, 2020 report, Burgisser erroneously concluded and consistent with his bias for insurers: (1) that the

single-ply, thermoplastic membranes on Dieterle's roofs were not damaged by hailstone impact; (2) that the metal roofs exhibited dents from hailstone impacts, but the dents did not affect the water-shedding capacity or remaining service life of the roofing (HAAG typically makes this functional damage conclusion even though HAAG knows that functional damage is not the damage standard under typical insurance policy, which is direct physical loss to covered property – like Dieterle's roof); and (3) that the leaks at various locations resulted from causes unrelated to the recent hail impacts and some of the leaks had been leaking for a long period of time.

8. Following the initial investigation and report from Burgisser, on August 20, 2020, Evan Williams of RMC Group, LLC (hereinafter "RMC") inspected the property and provided a repair estimate based on Burgisser's biased conclusions for only $63,403.47. RMC sent this estimate to Cincinnati's Fields Claims Superintendent, Kirk Geise. Due to Burgisser's biased report on Dieterle's claim and RMC's low-ball estimate, Dieterle retained Brett Fagan, P.E., and Joseph Joy of Building Diagnostics, Inc. (hereinafter "Building Diagnostics") for a second opinion on the matter.

9. On October 16, 2020, Building Diagnostics inspected Dieterle's property and submitted its observations and findings in an October 30, 2020 report. In this report, Mr. Joy and Mr. Fagan determined that they "observed numerous examples of hail damage to the TPO roof membrane …" from the May 27, 2020 hail storm and recommended that the roof membrane be replaced due to this damage. Building Diagnostics also noted numerous instances of damage from hail strikes on the fasteners and that such strikes almost always result in a tear or failure of the roof membrane, which Burgisser either ignored or erroneously attributed to wear and tear. Dieterle provided this report and findings to Cincinnati.

10. Instead of giving its insured Dieterle the benefit of the doubt or hiring a third engineer, who is not biased toward insurers, Cincinnati again had its biased engineer, Burgisser of HAAG, respond to Building Diagnostic's report. True to their bias, in a January 11, 2021

report, Burgisser and HAAG stated that there was no new information provided in the Building Diagnostics report and that they were not changing the conclusions in their original August 12, 2020 report.

11. In a January 12, 2021 letter (Cincinnati's first letter to Dieterle in this claim), Cincinnati belatedly acknowledged receipt of the claim. In doing so, Cincinnati violated section 542.055 of the Texas Insurance Code by failing to acknowledge receipt of the claim within fifteen days after it received notice of the claim. Jonathan Malish (hereinafter "Malish") of Cincinnati, its field claims specialist, authored this letter, but he never inspected the property and just relied on Burgisser and HAAG's biased investigation and report. Malish also belatedly attempted to reserve Cincinnati's rights and ineffectively tried to do a reservation of rights for this claim, which Cincinnati had already waived under Texas law by not sending out a timely reservation of rights letter before it started investigating and as required by Chapter 541 of the Texas Insurance Code.

12. In this letter, Malish and Cincinnati stated that Cincinnati was only paying for the hail damage to the metal roofing, HVAC units, west-facing elevation, and commercial sign. Malish determined that the total amount of this damage was only $63,403.47. After the policy's $25,000 deductible and less the recoverable depreciation of $10,236, Cincinnati only paid Dieterle $28,167.47 for the hail damage to his building from the May 27-28, 2020 hail storm. Malish and Cincinnati also denied Dieterle's claim for any hail damage to his TPO roofs based on inapplicable exclusions. In doing so, Malish and Cincinnati ignored the report and findings of the insured's engineer/consultants, Fagan and Joy from Building Diagnostics.

13. Thereafter, Dieterle engaged a Texas licensed public insurance adjuster, Jason Lanier of J.A. Lanier & Associates, Inc. (hereinafter "Lanier"), to assist Dieterle with his storm damage insurance claim. Lanier retained an experienced roofing and storm damage consultant, Gary Treider of Chaparral Consulting and Forensics (hereinafter "Treider"), to inspect Dieterle's property. In a July 16, 2021 report, Treider determined that the May 28, 2020 hail storm

produced high volumes of irregularly shaped hail, which left spatter marks that measured up to two inches in diameter. Treider also noted that hailstones are typically one-third larger than the hail spatter diameters observed. Based on his inspection and investigation of the May 28, 2020 hail storm damage to Dieterle's property, Treider concluded that significant hail and wind uplift occurred at the subject property that damaged Dieterle's property, its roof, and its roofing membranes. Treider also determined that buffeting/cyclonic winds had uplifted the TPO membrane, which damaged it and loosened its fasteners. Treider additionally determined that the roofs needed replacement to properly repair this damage from the May 28, 2020 storm.

14. Based on these findings, those of Building Diagnostic, and his inspection of the property and its storm damage, Lanier determined that the cost to properly repair the May 28, 2020 hail damage was $503,103.48. In addition, Lanier determined that an additional $92,396.26 would be incurred by Dieterle in code upgrades based on Building Diagnostic's findings that the roof needed to be replaced in accordance with local ordinances and codes. These findings and amounts to properly repair the storm damage to Dieterle's property were presented to Cincinnati and Malish, who appear to have ignored them. To date, Cincinnati and Malish have failed and refused to pay any additional amounts on Dieterle's storm damage insurance claim.

## V. Cause of Action for Breach of Contract

15. According to the insurance policy that Plaintiff purchased, Cincinnati has the duty to investigate and pay Plaintiff's policy benefits for claims made for damages to their property caused by the May 27, 2020, hail and windstorm. As a result of the storm, Plaintiff's property has sustained extensive damage, which is covered under Plaintiff's insurance policy with Cincinnati. Cincinnati has also breached this contractual obligation and the subject insurance policy by failing to pay Plaintiff's policy benefits for the cost to properly repair the windstorm and hail damage to Plaintiff's property as described herein. Cincinnati has also breached any contractual provisions on timely investigating, adjusting, and paying Plaintiff's storm damage

insurance claim. As a result of these breaches of contract, Plaintiff has suffered the damages that are described herein.

## VI. Causes of Action for Violation of Chapter 542 of the Insurance Code

16. Cincinnati's conduct that is described in this petition violates Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiff's windstorm claim, Cincinnati did not request from Plaintiff any items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for her claim. As a result, Cincinnati has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of its claim. Cincinnati has also violated Section 542.058 by failing to properly pay Plaintiff's claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period. For these violations, Cincinnati owes Plaintiff the 10% per annum interest as damages for its failure to timely pay the amounts that it did pay and for any unpaid amount under Section 542.060 of the Texas Insurance Code, plus reasonable attorney's fees, prejudgment interests, and court costs. In the event it is determined that Cincinnati owes Plaintiff any additional monies, then Cincinnati has automatically violated Chapter 542 of the Texas Insurance Code.

## VII. DTPA Causes of Action

17. Plaintiff incorporates all the allegations in this petition for these causes of action against Defendant, Cincinnati, under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against Defendant. Specifically, the violations of Cincinnati of the DTPA include, without limitation, the following matters:

   A. By its acts, omissions, failures, and conduct that is described in this petition, Defendant Cincinnati has violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Cincinnati's violations include, without limitation, (1) its unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim; (2) its failure to properly investigate Plaintiff's claim; (3) its hiring of and reliance upon biased adjusters to obtain favorable, result-oriented reports and estimates to assist the insurer in denying Plaintiff's insurance claim; and (4) its failure

to pay for the proper repair of Plaintiff's property after their liability become reasonably clear;

B. As described in this petition, this Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) if the DTPA;

E. By representing that Cincinnati would pay to repair the damages caused by the storm and then not doing so, Defendant has violated Sections 17.46(b)(5), (7), and (12) of the DTPA;

F. Cincinnati has breached an express warranty that the damage caused by the storm would be covered under the subject insurance policy. This breach entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Cincinnati's actions, as described herein, are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

H. Cincinnati's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

I. Cincinnati's conduct, acts, omissions, and failures as described in this petition have caused Plaintiff an independent injury in the loss of policy benefits that it would have otherwise received. Cincinnati's misrepresentations, including but not limited to, Cincinnati's woefully deficient scope and its wrongful denial when liability has become reasonably clear, are the producing cause of Plaintiff's harm which give it the right to relief under the DTPA.

18. All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages that are described in this petition.

### VIII. Causes of Action for Unfair Insurance Practices

19. Plaintiff incorporates all the allegations in this petition for these causes of action against Cincinnati under the Texas Insurance Code. Plaintiff has satisfied all conditions

precedent to bringing these causes of action. By its acts, omissions, failures, and conduct, Cincinnati has engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Cincinnati's failure to properly and reasonably investigate Plaintiff's claim. They also include Cincinnati's unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim and its failure to pay for the proper repair of Plaintiff's property on which Defendant's liability had become reasonably clear. They further include Defendant's hiring and use of biased adjusters and consultants to obtain result-oriented reports and estimates to assist Defendant in low-balling and denying Plaintiff's insurance claim. In addition, Defendant failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, Cincinnati is guilty of the following unfair insurance practices:

A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B. Engaging in unfair claims settlement practices;

C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendant's liability has become reasonably clear;

E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

F. Refusing to properly pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim and by conducting a sham investigation that ignored and excluded damage from the subject storm; and

G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

20. Because of Cincinnati's failures and violations as described herein, Cincinatti has caused Plaintiff an independent injury of in the loss of policy benefits that it would have otherwise received. Cincinnati has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

### IX. Causes of Action for Breach of Duty of Good Faith and Fair Dealing

21. Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, Cincinnati has breached its common law duty of good faith and fair dealing by partially denying Plaintiff's claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its partial denial and low-ball payment. Defendant has also breached its duty by unreasonably delaying payment of Plaintiff's claim and by failing to settle Plaintiff's claim because Cincinnati knew or should have known that it was reasonably clear that the entire claim was covered. Cincinnati's acts, omissions, failures, and conduct proximately caused Plaintiff's damages.

### X. Waiver and Estoppel

22. Cincinnati has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

### XI. Damages

23. The above-referenced conduct of Cincinnati has caused Plaintiff's damages, which include, without limitation, the unpaid cost to properly repair the storm damage to Plaintiff's property in the amount of $595,499.74 and any investigative and engineering fees incurred during the claim process. Plaintiff is also entitled to recover ten percent per annum interest as damages on all unpaid amounts and on the amounts that Cincinnati untimely paid under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of the Court.

### XII. Additional Damages

24. Defendant has also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes.

As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

### XIII. Exemplary Damages

25. Cincinnati's breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Cincinnati are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Plaintiff seeks such damages in an amount to be determined by the finder of fact that is sufficient to punish Cincinnati for its wrongful conduct and to set an example to deter this Defendant and others similarly situated from committing similar acts in the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiff has already demanded a trial by jury and after the final hearing in this case, Plaintiff requests that the Court award Plaintiff a judgment against Defendant for the following:

1. Actual, economic, consequential, additional, and exemplary damages in an amount within the jurisdictional limits of the court;
2. The 10% per annum interest as damages on all unpaid amounts under Chapter 542 of the Texas Insurance Code;
3. Reasonable attorneys' fees through trial and on appeal;
4. Pre-judgment and post-judgment interest as provided by law;
5. Costs of court; and
6. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

*Loree & Lipscomb*
The Terrance at Concord
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310

By: */s/ Robert W. Loree*
Robert W. Loree
State Bar No. 12579200
rob@lhllawfirm.com
Stephen M. Fields
State Bar No. 24096598
stephen@lhllawfirm.com

Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

    I certify that Plaintiff has served a true and correct copy of the foregoing document on November 7, 2022 to all counsel of record through the Court's ECF filing system:

*/s/ Stephen M. Fields*
Stephen M. Fields
