IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MATTHEW JAMES DIETERLE AS TRUSTEE OF THE JOHN L. DIETERLE TRUST NO, 1<br> *Plaintiff,*<br><br>v.<br><br>CINCINNATI INSURANCE COMPANY<br> *Defendant.* | § § § § § § § § § § | CIVIL ACTION NO. 5:22-cv-00835-XR |

**DEFENDANT CINCINNATI INSURANCE COMPANY'S
OPPOSED MOTION TO COMPEL**

Defendant Cincinnati Insurance Company ("Cincinnati") hereby files this Opposed Motion to Compel seeking documents responsive to Cincinnati's production requests, and in support thereof would respectfully show the Court as follows:

### I. INTRODUCTION

1. Pursuant to Federal Rule of Civil Procedure 37(a)(1), Cincinnati respectfully seeks an Order compelling Plaintiff to produce documents responsive to Cincinnati's Requests for Production, primarily concerning roof and HVAC maintenance and repair records and communications with third parties including tenant leak complaints, that are relevant to this first-party hail damage lawsuit. Notably, Plaintiff's representative has recently testified at his deposition that no efforts were made to locate responsive documents at any time during the months of discovery that have passed in this case. Counsel for Cincinnati has conferred with counsel for Plaintiff at and following the deposition of Plaintiff on June 8, 2023, during a call on June 26, 2023 where Plaintiff advised that documents would be produced in the coming weeks, and by email on July 17, 2023 to which no response was received. Cincinnati has complied with the conferral requirements of Local Rule CV-7(i), but disputes remain that require Court intervention.

1

## II.   FACTUAL BACKGROUND

2.   This case concerns a first-party insurance claim for hail damage to Plaintiff's commercial property from a storm that is alleged to have occurred on or about May 27 or May 28, 2020.[1] Cincinnati seeks discovery on the pre-loss condition of the property and the history of maintenance and roofing repairs to the property that is relevant to the presence of damage, when it occurred, and what the true cost would be to repair the claimed damage.

3.   Cincinnati served its initial written discovery on Plaintiff on January 11, 2023.[2] Plaintiff served its objections and responses on February 24, 2023.[3] Pertinent to this motion were the following requests:

- Request for Production No. 2: regarding documentation evidencing repairs caused by the storm;
- Request for Production No. 4 and 11: regarding documentation evidencing repairs and maintenance prior to the loss, and maintenance or repairs to the roof; and
- Request for Production No. 13 through 15: regarding non-privileged communications with third parties and public adjusters regarding the claim and claimed damages.

4.   Plaintiff's responses asserted a number of boilerplate objections, stating that "subject to" those objections, a production of 642 pages was attached.[4] No specific reference was given for which of the 642 pages were responsive to the individual requests. None of the documents produced included documentation of repairs and maintenance prior to or after the storm, nor any email communication between Plaintiff and other parties. On the morning of June 8, 2023, the day of Plaintiff's corporate representative deposition, Plaintiff produced 17 additional

---

[1] Doc. No. 15, Plaintiff's First Amended Complaint at ¶5.

[2] Exhibit A, January 1, 2023 Email and Attached First Written Discovery Requests.

[3] Exhibit B, Plaintiff's February 23, 2023 Responses to Request for Production.

[4] *Id*.

pages of documents concerning two topics: (1) a post-loss complaint of leaking from one of Plaintiff's tenants (and attached photographs); and (2) a post-loss complaint of damage to an outdoor sign (without the referenced attached photographs which are still missing).[5]

5.   At his June 8, 2023 deposition, Plaintiff's representative testified that he keeps regular records of maintenance and hard invoices as part of his tax and accounting processes.[6] However, Plaintiff confirmed that he had made *no effort* to review those records and gather maintenance and repair records for production in this matter, prior to gathering the 17 pages produced that morning.[7] That document set included no maintenance or repair records, no complaints from tenants of leaking *before* the loss, and no communication with other third parties other than tenant leak complaints *after* the loss.[8] Plaintiff testified that he had not run any email searches for communications regarding repairs, or communications and tenant complaints of leaking before the loss, only gathering the post-loss leak complaints he thought of in preparation for the deposition (which supported only *his* position that leaking occurred after the storm).[9]

6.   With respect to Request for Production No. 2 regarding post-loss repairs, Plaintiff testified that he had made post-loss "mitigation" repairs, but that he had not gathered those documents for production.[10] With respect to production requests 4 and 11 for pre-loss repairs and roof repairs, Plaintiff indicated that he had gathered some repair documents but had not provided

---

[5] *See* Exhibit C, June 8, 2023 Document production set.

[6] *See* Exhibit D, June 8, 2023 deposition of Matthew Dieterle, pp. 51:8-52:24.

[7] *Id*. at pp. 53:5-12; 53:25-54:6.

[8] Exhibit C, June 8, 2023 Document set.

[9] *See* Exhibit D, June 8, 2023 deposition of Matthew Dieterle, pp. 54:13-18.

[10] *Id*. at 110:16-111:18

them to counsel for production.[11] Plaintiff further agreed to provide a QuickBooks report of maintenance expenses incurred, but he never did.[12] Plaintiff testified that he had replaced roofs at the complex following a 2018 appraisal award for a 2016 hail claim, but had made no attempts to review his records and produce documents on the price that was charged for that roofing work *just two years before this loss*.[13] Those roofs, like the roofs at issue, are comprised of a TPO membrane. All of the roofs are insured under the same Cincinnati policy, and all properties were reported to be damaged in the initial reporting of the subject claim.

7. With respect to Requests for Production Nos. 13-15, although he had not in the preceding months of discovery, Plaintiff agreed to run email searches for communications with parties such as the public adjuster Jason Lanier, prior roofers and contractors, and others who he had spoken with regarding the insurance claim and roof repair or replacement work.[14] No documents were subsequently produced.

8. The parties recently engaged in settlement discussions through their mutually agreed mediator in an effort to resolve the case, which ended without settlement on July 25, 2023. In order to properly prepare its defense of this case, Cincinnati requests the Court's intervention to compel production of responsive documents.

### III.  STANDARD OF REVIEW

9. Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,

---

[11] *See* Exhibit D, June 8, 2023 deposition of Matthew Dieterle, pp. 111:19-112:19.

[12] *Id*. at p. 114:21.

[13] *Id*. at pp. 64:7-20; 66:8-67:3.

[14] *Id*. at p. 115:8-116:11.

the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[15] When responding to discovery, a party must make a complete response, based on the party's "relative access to relevant information, the [party's] resources, and the importance of the discovery in resolving the issues[.]"[16] "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."[17] An evasive or incomplete response will be treated as a failure to answer or respond.[18] In a first party property insurance dispute, "evidence of prior damage and repairs to Plaintiff's property are plainly relevant."[19] "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[20]

## IV.   ARGUMENT

(a) <u>Production No. 2: Documentation evidencing repairs for damage allegedly caused by the storm.</u>

10.   Cincinnati's second request for production requested that Plaintiff produce "maintenance documents related to or evidencing any repairs of damage to the Property that You allege was caused by the Loss… including… bids, estimates, invoices, receipts, and/or cancelled

---

[15] Fed. R. Civ. P. 26(b)(1).

[16] *Id*.

[17] Fed. R. Civ. P. 37(a)(1).

[18] Fed. R. Civ. P. 37(a)(4).

[19] *See Gomez v. Nationwide Prop. & Cas. Ins. Co.*, No. 5:15-CV-67, 2016 U.S. Dist. LEXIS 198256, at *20–21 (S.D. Tex. Feb. 26, 2016) (granting motion to compel "documents regarding any repairs or maintenance to Plaintiff's property in the last five years" and "documentation of maintenance or repairs to the roof of Plaintiff's property").

[20] Fed. R. Civ. P. 37(a)(1).

checks" (including repairs requested, completed, begun but not completed, and/or merely contemplated).[21] Plaintiff responded with objections, pointing to the self-serving repair estimate of its public adjuster, pointing generally to the 642-page document production that included no such repair records, and stating that he would supplement with documentation of "mitigation repairs."[22]

11. Plaintiff subsequently testified that he did have documentation of repairs from after the loss event.[23] He had also spoken to contractors concerning the $52,000 in HVAC repairs allowed for in Cincinnati's estimate, but could not recall specifics without reviewing his records on the subject.[24] Yet, despite keeping regular records of maintenance, Plaintiff confirmed he had made no efforts to gather those documents for production.[25] Plaintiff's counsel indicated that records would be produced in subsequent conferral, however, no records have been produced.

(b) <u>Production Request No. 4 and 11: documentation evidencing repairs and maintenance prior to the loss, and maintenance and repairs of the roof.</u>

12. Cincinnati's fourth and eleventh Requests for Production asked Plaintiff to produce "documents related to or evidencing any repairs or maintenance to the Property performed prior to the Loss" and "maintenance or repairs of the roof," limiting both requests to the time in which

---

[21] Exhibit B, Plaintiff's Responses and Objections to Defendant's Request for Production, at p. 3 RFP 2.

[22] *Id.*

[23] Exhibit D, June 8, 2023 deposition of Matthew Dieterle, pp. 47:24-48:8 (HVAC and roof opening repairs immediately following storm), 51:1-21 (regarding boxes of invoices), 110:16-111:9 (Regarding "mitigation repairs" following the loss).

[24] *Id.* at p. 87:20-24.

[25] *Id.* at pp. 87:17-88:25 (regarding HVAC contactor's evaluation of $52,000 in HVAC damage allowed by Cincinnati and potential bids to do the work); 53:5-12 (maintenance and repairs records generally); 53:25-54:6 (regarding roof repairs); 111:8-112:19 (regarding prior roof repairs by contractor Dutch).

Plaintiff owned the Property, or the last ten (10) years, whichever was shorter.[26] Plaintiff asserted boilerplate objections and vague assertions of privilege, and again pointed to the 642-page document production *which contained no such records*.[27]

13.  Again, at his deposition, Plaintiff testified that he in fact had such records[28] but that no efforts had been made to gather repair and maintenance records from before the loss.[29] Critically, Plaintiff testified that he had replaced roofs on some of the insured properties following a 2016 hail claim with Cincinnati and May 2018 appraisal award in that claim for roof replacements.[30] Specifically, Plaintiff replaced a roof over the Sherman Williams paint store and adjacent "New Sound" and a dentist's office, which lie just across the parking lot from the building at issue and which are insured under the same policy with Cincinnati:[31]

---

[26] Exhibit B, Plaintiff's Responses and Objections to Defendant's Request for Production, at p. 3 RFP and p. 5 RDP 11.

[27] *Id*.

[28] Exhibit D, June 8, 2023 deposition of Matthew Dieterle, pp.112:4 (regarding repair and maintenance records for roofs and HVAC systems); 51:10 (records kept for amounts incurred for maintenance for tax purposes).

[29] *Id*. at pp. 53:12 (maintenance and repair records), 54:6 (roof repair records); 112:19 (pre-loss repair records).

[30] *Id*. at p. 59:5-61:13.

[31] *Id*. at p. 62:7-14.



14.     Those new roofs, and the older roofs at issue in this lawsuit, are TPO membrane roofs. But Plaintiff testified that he had not attempted to review his records for documentation of what the price was for roofing work done in 2018 for the 2016 claim.[32] Moreover, Plaintiff claimed to be unaware of the cost of those TPO roof replacements or even who had done the work, but agreed his records would provide such information.[33] While Plaintiff's counsel indicated that his client was still gathering documents for production following the deposition and that such documentation would be produced near the end of June, no additional production has occurred.

(c)     <u>Production Request Nos. 13-15: Communications with third parties regarding the claim and damages claimed.</u>

---

[32] Exhibit D, June 8, 2023 deposition of Matthew Dieterle, pp. 64:7-20 (regarding amount paid for roof replacements); 66:8-67:3 (regarding identity of roofing company who completed roof replacements).

[33] *Id*. at p. 82:2.

8

15. Cincinnati's thirteenth through fifteenth Requests for Production requested that Plaintiff produce "non-privileged correspondence or communication between You and any third party" regarding the claim and the alleged damage, specifically including Plaintiff's public adjuster Jason Lanier.[34] Plaintiff again asserted boilerplate objections and referenced the 642-page document production that contained *no such records*.[35] On the day of Plaintiff's deposition, and only for the information that suited Plaintiff's position in this case, a supplemental production was made with three emails to Plaintiff concerning post-loss leaking and sign damage.[36] Plaintiff did not conduct a search for emails, but only located the emails *he remembered* that would show post-loss leak complaints (and thus support his position in this case).[37]

16. In his deposition, Plaintiff confirmed that he had made no effort to search for emails or communication with tenants regarding leaks, or with his public adjusters regarding this claim.[38] Plaintiff also retained an engineer himself in this claim, along with public adjuster Jason Lanier and loss consultant Gary Trieder. No email communications with any of those individuals were produced. Plaintiff testified that he had communications with contractor Grant Dean, owner of Cactus Companies who did roofing work related to the prior claim about the facts of this claim (potentially roofing repairs for damage claimed in this claim), but had not searched for or produced those communications.[39] Plaintiff confirmed that if he had a complaint from a tenant about leaking

---

[34] Exhibit B, Plaintiff's Responses and Objections to Defendant's Request for Production, at p. 6 RFPs 13-15.

[35] *Id*.

[36] Exhibit C, June 8, 2023 Document set.

[37] Exhibit D, June 8, 2023 deposition of Matthew Dieterle, p. 54:8-18.

[38] *Id*. at pp. 54:17 (searches for emails re tenant leak complaints or communications with PA); 115:8-116:11 (communications with roofing contractor and PA).

[39] *Id*. at pp. 72:6-20 (communications with roofing contractor about this claim); 87:20-88:25 (HVAC contractor bids for damage claims in this claim).

9

he would keep that email.[40] Plaintiff confirmed that we would communicate with his long time roofing contractor Dutch Dreibrodt through text and email.[41] None of these emails and communications have been produced, and Plaintiff has testified under oath that no efforts were made to locate the documents for production in response to Cincinnati's production requests.

17.     Cincinnati therefore requests Plaintiff be compelled to produce all documents responsive to Cincinnati's Requests for Production Nos. 2, 4, 11, 13, 14 and 15 as set forth above.

## V.     CONCLUSION AND PRAYER

18.     WHEREFORE, PREMISES CONSIDERED, Defendant Cincinnati Property and Casualty Insurance Company respectfully prays Plaintiff's objections to Cincinnati's written discovery be overruled and that Plaintiff be compelled to make complete responses to Cincinnati's requests for production within ten days of the Court's order granting this motion. Cincinnati further prays for all additional relief to which it may show itself justly to be entitled.

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
William Ansel M. Stroud
Texas Bar No. 24131929
astroud@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT**

---

[40] *Id*. at p. 22:7-19.

[41] *Id*. at p. 23:10-24:2.

## CERTIFICATE OF CONFERENCE

Robert Wall, counsel for Defendant Cincinnati Insurance Company, has complied with the conferral requirement in Local Rule CV-7. Conferral attempts were made during and after the June 8, 2023 deposition of Plaintiff's representative, in the days that followed including June 26, 2023 by phone, and by email on July 17, 2023. Plaintiff has not produced any additional responsive documents, although they indicated a supplemental production was intended. Plaintiff's counsel has confirmed that this motion is opposed by Plaintiff.

*/s/ Robert G. Wall*
Robert G. Wall

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF on this the 26th day of July, 2023 to:

Robert W. Loree
Stephen M. Fields
Loree & Lipscomb
777 E. Sonterra Blvd., Ste. 320
San Antonio, Texas 78258
rob@lhlawfirm.com
stephen@lhllawfirm.com

*/s/ Robert G. Wall*
Robert G. Wall